**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

FILED BY _NA_ D.C.

FEB 2 6 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Brian Evans,

Plaintiff,

v.

Inter Miami CF, LLC,

Defendant.

Case No.: _____

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff Brian Evans, proceeding pro se, sues Defendant Inter Miami CF, LLC ("Inter Miami")

and alleges:

**JURISDICTION AND VENUE**

This action arises under federal law, including Section 43(a) of the Lanham Act, 15 U.S.C.

§1125(a), and presents a federal question within the meaning of 28 U.S.C. §1331. Federal

question jurisdiction exists regardless of the parties' shared Florida citizenship. See Grable &

Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005); POM Wonderful LLC v.

Coca-Cola Co., 573 U.S. 102 (2014).

1

This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. §1367 because those claims arise from the same nucleus of operative fact.

Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to the claims occurred within this District.

This Complaint satisfies federal pleading standards because it contains specific factual allegations supporting each count and avoids impermissible shotgun pleading. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009); Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015). At the pleading stage, factual allegations must be accepted as true and construed in the light most favorable to Plaintiff. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252 (11th Cir. 2009).

## PARTIES

Plaintiff Brian Evans is a Florida resident, a fifteen-time Billboard charting recording artist who has performed the national anthem fifty-one times at Major League sporting events, and the paying consumer who personally purchased the premium tickets and the experiential opportunity at issue in this case.

Plaintiff attended the event with Franco, an Argentinian individual from a disadvantaged background whom Plaintiff mentors and supports. Although the moment was intended for Franco, Plaintiff himself is the purchaser, contracting party, and injured consumer whose money secured the experience that Defendant disrupted. Courts recognize that the purchaser of a service has standing to pursue claims arising from that transaction even where the benefit was intended for another person. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

2

Defendant Inter Miami CF, LLC owns, operates, markets, and controls stadium operations, premium experiences, guest-services personnel, and fan interactions occurring at its events.

At all relevant times, Inter Miami's uniformed employee acted with actual and apparent authority. Apparent authority exists where a principal places an agent in a position that would lead a reasonable person to believe authority exists. Mobil Oil Corp. v. Bransford, 648 So.2d 119 (Fla. 1995).

## NATURE OF THE ACTION

This action is not about two tickets. It concerns the loss of a singular experiential opportunity promised to Franco — a moment that cannot be recreated through ordinary compensation. Plaintiff could not care less whether he personally receives a photograph with Lionel Messi. Plaintiff does not seek a picture for himself and does not need to meet Messi. Plaintiff did not even know who Lionel Messi was until traveling to Argentina and meeting Franco, where Plaintiff saw firsthand how deeply Messi inspired Franco and shaped his aspirations. A simple photograph between Franco and a fellow Argentinian — someone Franco admired and related to culturally — would have been life-changing and inspirational for a young person from a very poor part of Argentina.

When Plaintiff first met Franco, Franco was cooking food out of a hole in the ground. That moment profoundly affected Plaintiff and led him to decide that he would do everything he could to help Franco build a better future filled with opportunity and inspiration. Plaintiff's efforts to create meaningful experiences for Franco — including the event at issue here — arose from that commitment.

Franco's admiration is reflected in the five jerseys hanging on his wall — jerseys Plaintiff personally obtained for him in an effort to support and encourage him. Plaintiff has since tried

repeatedly to recreate or repair the lost moment through alternative opportunities and personal efforts, but every attempt has failed. The promise made by Defendant's uniformed employee created a unique moment that cannot be replaced.

Franco does not even know that Plaintiff is taking this legal action. This lawsuit is not driven by Franco, and Plaintiff believes Franco would likely be uncomfortable with litigation. Plaintiff brings this action because of his own sense of right and wrong. Having experienced significant personal tragedy in his own life, Plaintiff found purpose in helping Franco pursue inspiration and hope. When Defendant's conduct took that moment away from Franco, it ignited something deeply personal within Plaintiff — a belief that standing up for what happened that day was necessary regardless of personal cost.

This legal action is the last thing Plaintiff wanted to do. Plaintiff had great respect for the Messi name and for everything he learned about Lionel Messi and his father. Plaintiff even wrote a book that spoke positively about Messi's father and portrayed him as a good and honorable person. Bringing this case broke Plaintiff's heart because it forced him to confront what felt like a betrayal of the values he believed the organization represented. Ultimately, Plaintiff came to realize that despite the personal inspiration associated with the Messi name, Defendant operates within a corporate system like any other, one that ignored repeated attempts at resolution and left Plaintiff with no alternative but to pursue accountability through the courts.

The fact that Franco is unaware of this lawsuit does not diminish Plaintiff's standing or the legitimacy of the claims. Plaintiff is the individual who purchased the tickets, relied on Defendant's representations, surrendered the premium seating location based on Defendant's promise, and suffered the resulting harm as the contracting consumer. The law protects the

4

purchaser's right to seek redress even when the experiential benefit was intended for another person.

Prior to these events, Plaintiff was a diehard Inter Miami supporter who attended games regularly and viewed the organization as one rooted in passion, respect, and connection with its fans. After the events described herein and Defendant's complete refusal to respond, Plaintiff no longer attends games and feels that the experience was transformed from one centered on fan appreciation into one driven solely by profit, mirroring conduct widely criticized across professional sports organizations.

Plaintiff is at a complete loss that Defendant knew one of its staff members promised to return after the game and yet chose to ignore Plaintiff entirely. That conduct does not reflect the public image or spirit that Inter Miami CF promotes to its supporters. From Plaintiff's personal experience, he went from being a loyal fan to someone who cannot even bring himself to look at Lionel Messi's face without remembering how deeply Franco was hurt. Franco, remarkably, still attends games and cheers for Messi, while Plaintiff sits at a loss for words and cannot bring himself to attend games anymore because each visit reminds him of what Defendant did to this young fan who remains loyal to an organization that has shown no comparable loyalty in return. The only consistent exchange Defendant maintained with Franco was the acceptance of his money as a paying fan.

Plaintiff has separate litigation pending against StubHub, Inc. before the United States Court of Appeals for the Eleventh Circuit. It is the only case ever to reach full briefing against StubHub – ever. That matter concerns ticket-seller conduct. This lawsuit concerns Inter Miami's independent conduct at the stadium and its complete refusal to respond afterward.

**NOTICE AND OPPORTUNITY TO RESOLVE**

5

Before filing this action, Plaintiff made repeated good-faith efforts to resolve the matter privately. Plaintiff made every effort possible to allow Defendant to make the situation right, including offering to contribute money to charitable organizations aligned with Inter Miami and Lionel Messi in order to restore the promised moment for Franco.

At one point, Plaintiff advised Defendant that he was considering legal action in state court but expressly stated that he did not want to damage the relationship or force litigation and preferred a respectful resolution. Defendant did not respond to that communication or acknowledge it in any way. Plaintiff ultimately realized that Defendant did not care one way or another about repairing the harm caused.

Defendant ignored every effort completely. No legal department response was provided, no acknowledgment was made, and no corrective action was taken.

The moment Plaintiff initiated litigation against StubHub, Defendant ceased all meaningful communication. Despite publicly asserting that it is not connected with StubHub's conduct, Defendant was provided numerous screenshots and written warnings demonstrating that StubHub was continuing to misrepresent seating to fans. Defendant never responded to a single email, never denied the issue, and never took visible corrective action.

Defendant's silence after repeated notice mirrors its conduct at the stadium when its uniformed employee instructed Plaintiff and Franco to relocate seats with the promise that staff would return after the game and then failed to do so.

Courts recognize that ignored consumer complaints and failure to respond to repeated notice may support claims under FDUTPA and related equitable theories. Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc., 169 So.3d 164 (Fla. 4th DCA 2015).

6

Plaintiff further states that significant documentary evidence exists confirming the factual allegations set forth herein, including written communications, contemporaneous messages, admissions from Inter Miami personnel, screenshots, and documentary proof surrounding the national anthem commitments. Consistent with federal pleading standards, such materials are not attached at this stage but will be presented in any opposition or reply briefing should Defendant move to dismiss or otherwise challenge this Complaint.

Realizing that viable federal causes of action existed and that Defendant had ignored all prior attempts to resolve the matter amicably, Plaintiff elected to pursue this action in federal court in order to seek accountability through the proper legal framework.

## FACTUAL ALLEGATIONS

Plaintiff purchased tickets represented as premium suite-level seating for an Inter Miami match. Prior to the event, Plaintiff received confirmation from Lionel Messi's father that if Franco's sign were visible from the suite area, Messi would look for it during the match.

Plaintiff advised Inter Miami in advance that he was undergoing cancer treatment and lacked the physical energy or medical ability to stand outside the park in extreme heat hoping for a glimpse of Messi or a chance encounter. After the events described herein, Plaintiff also sent Defendant documented evidence confirming his cancer diagnosis so that Defendant could understand the seriousness of his medical condition and why waiting outside in the heat was not physically possible for him.

Plaintiff informed Inter Miami that he was undergoing cancer treatment and could not safely wait outdoors in extreme heat among large crowds for uncertain access opportunities. Plaintiff reasonably believed that premium seating provided an organized opportunity consistent with Inter Miami's representations.

Because Defendant knew Plaintiff's medical limitations at the time (being treated for cancer) and vulnerability, it was reasonably foreseeable that Plaintiff would rely heavily on any structured promise made by uniformed staff rather than uncertain public interactions outside the stadium. The reliance induced by Defendant's employee was therefore not only reasonable but expected under the circumstances.

Upon arrival at the stadium, despite presenting proof of suite-level tickets and written confirmation, a uniformed Inter Miami employee wearing a visible badge approached Plaintiff. The employee was positioned and presented as official Inter Miami personnel interacting with ticketed guests during stadium operations, reinforcing Plaintiff's reasonable belief that the promise was authorized.

The employee acknowledged recurring issues with ticket representations and stated that similar problems had occurred before, directing Plaintiff to relocate to inferior seating.

The uniformed employee made a specific and definite promise that Franco would be given a post-game photograph opportunity with Lionel Messi if Plaintiff moved seats.

Plaintiff relied on that representation solely because it concerned Franco's experience and relinquished the premium seating location that made the opportunity possible.

No employee returned. The promised opportunity for Franco never occurred.

The opportunity to meet Lionel Messi is frequently auctioned or offered through private charitable events for substantial sums, underscoring the unique and irreplaceable nature of the moment that was taken from Franco.

Separately, Plaintiff had been given written confirmation that he would perform the national anthem at a future stadium opening. Plaintiff — a fifteen-time Billboard charting artist who has sung the national anthem fifty-one times at Major League games — shared that news with his

nephews and others, and plans were discussed around that anticipated event as a meaningful family moment.

After Plaintiff initiated litigation against StubHub, the definitive language regarding the anthem commitment changed to uncertainty, and Defendant ceased communications entirely. This is all documented as is every allegation in this Complaint.

## COUNT I

### FALSE OR MISLEADING COMMERCIAL REPRESENTATIONS

### (Lanham Act – 15 U.S.C. §1125(a))

Section 43(a) of the Lanham Act prohibits false or misleading representations of fact in commercial promotion likely to deceive consumers. 15 U.S.C. §1125(a); Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

To state a claim, a plaintiff must plausibly allege a false or misleading statement, made in interstate commerce, that deceives or has the capacity to deceive and results in injury. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256 (11th Cir. 2004); Duty Free Americas, Inc. v. Estée Lauder Cos., 797 F.3d 1248 (11th Cir. 2015).

Inter Miami, through its uniformed employee acting under brand authority, made specific representations concerning premium access and post-game experiences promised to Franco. The Lanham Act prohibits false or misleading representations of fact in commercial promotion that are likely to cause injury. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014); POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102 (2014). Inter Miami engages in commercial promotion and sale of premium seating and hospitality experiences designed to influence consumer purchasing decisions.

Acting within the scope of those commercial activities, Inter Miami's staff made material representations concerning a premium post-match experience intended to induce Plaintiff's compliance with stadium directives. Inter Miami possessed knowledge that suite-level access represented in the marketplace conflicted with its internal policies, as confirmed by its sales personnel. Despite such knowledge, Inter Miami's staff reinforced the existence of premium benefits that were not delivered. These representations were made in connection with commercial activities and materially misled Plaintiff regarding the nature and value of the experience. Plaintiff suffered commercial injury as a result.

## COUNT II

## PROMISSORY ESTOPPEL

A promise which the promisor should reasonably expect to induce reliance is enforceable where injustice can be avoided only by enforcement of the promise. See DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So.3d 85 (Fla. 2013). Inter Miami, through its authorized representative, made a clear promise that Plaintiff's guest would receive a post-match experience if Plaintiff complied with relocation instructions. Plaintiff relied on that promise by relinquishing superior seating and remaining after the match.

Inter Miami, through its uniformed employee, made a clear and definite promise that Franco would be retrieved after the match and provided a photograph opportunity with Lionel Messi. The promise was specific, immediate, and tied directly to Plaintiff's relocation from premium seating.

Plaintiff reasonably relied on that promise by surrendering the seating location that made the opportunity possible. Defendant knew or should have known that such a promise would induce

10

reliance, particularly where the employee acknowledged that similar issues had occurred previously and understood Plaintiff's physical limitations.

Injustice can be avoided only by enforcement because the promised moment was unique, irreplaceable, and cannot be replicated through ordinary financial compensation alone. The representative even stated to Franco "You can also bring the poster you made to get signed." That poster – which took Franco six hours to create the night before the sporting event – was the poster Messi's father emailed to the Plaintiff that his son would be looking for if Inter Miami had not moved him despite the showing of the tickets to the suite section, which also allowed both to pass the ticket scanning system on entry, demonstrating authorized entry consistent with the representations made. That conduct constituted substantial reliance on the promise.

## COUNT III

## NEGLIGENT MISREPRESENTATION

Negligent misrepresentation occurs when false information is supplied in a business transaction without reasonable care, inducing reliance. Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334 (Fla. 1997).

Inter Miami's employee, acting within the scope of authority, supplied information regarding guaranteed post-game access without exercising reasonable care to ensure that such access would occur.

The representation was made during a commercial event to paying consumers and directly influenced Plaintiff's decision to relinquish premium seating.

Defendant knew or should have known that inaccurate assurances concerning access to a globally recognized athlete would cause substantial emotional and experiential harm if unfulfilled.

Plaintiff's reliance was foreseeable, reasonable, and directly caused by Defendant's negligent misrepresentation. Plaintiff sent Defendants dozens of screenshots confirming the seats were still being sold, and the Defendants did nothing about it.

## COUNT IV

## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

FDUTPA prohibits deceptive or unfair acts likely to mislead consumers and offend established public policy. Davis v. Powertel, Inc., 776 So.2d 971 (Fla. 1st DCA 2000); PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So.2d 773 (Fla. 2003).

Defendant's conduct constitutes an unfair practice because it induced Plaintiff to accept inferior seating through assurances that were never honored and then ignored repeated communications seeking resolution.

Defendant's failure to respond after receiving extensive notice, screenshots, and warnings regarding ongoing ticket issues demonstrates conduct that is unethical, oppressive, and substantially injurious to consumers.

Such behavior undermines consumer trust and transforms what is marketed as a fan-centered experience into one driven solely by profit at the expense of loyal supporters.

## IRREPARABLE EXPERIENCE

This case concerns the loss of a unique experiential opportunity that cannot be duplicated through replacement tickets or ordinary commercial remedies. See Siegel v. LePore, 234 F.3d 1163 (11th Circuit 2000) (en banc). Also, Cate v. Oldman, 707 F.2d 1176 (11th Cir. 1983) and eBay, Inc. v. MercExchange LLC., 547 U.S. 388 (2006).

12

## CONCLUSION

In sum, Defendant's conduct was not isolated or inadvertent. Plaintiff repeatedly provided Defendant with extensive written notice, including dozens of screenshots and supporting documentation, advising that deceptive ticketing practices and related representations were occurring and continuing in real time. Despite this documented notice — and despite acknowledgments from individuals acting within Defendant's organization — Defendant failed to respond, investigate, or take corrective action. Such knowing inaction after notice supports liability under the Florida Deceptive and Unfair Trade Practices Act and related claims, as liability may arise where a defendant continues unfair or deceptive conduct after receiving clear warning of consumer harm. See Davis v. Powertel, Inc., 776 So.2d 971 (Fla. 1st DCA 2000); PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So.2d 773 (Fla. 2003). Plaintiff has therefore adequately alleged notice, reliance, and resulting damages sufficient to proceed beyond the pleading stage.

Plaintiff files this action based upon the information presently available following a reasonable pre-suit investigation. Plaintiff continues to review publicly available records and other lawful sources to better understand Defendant's organizational structure, governance, and the identities and roles of individuals or entities associated with Defendant. As additional facts become known through ongoing investigation or discovery, Plaintiff reserves all rights under Florida Rule of Civil Procedure 1.190 to amend this pleading to conform to the evidence and, where legally appropriate, to clarify or adjust the parties including the LLC members individually when discovered. This statement is included solely to reflect the continuing investigative process and preservation of procedural rights

13

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

Enter judgment in favor of Plaintiff;

Award compensatory damages reflecting the loss of a unique experiential opportunity promised

to Franco;

Award costs and interest as permitted by law;

Grant such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Brian Evans

2080 South Ocean Drive, Suite 1505

Hallandale Beach, Florida 33009

Telephone: 954-214-3076

Email: belasvegas@yahoo.com

Plaintiff, Pro Se

14

BRIAN EVANS
2080 S. Ocean Drive - Suite 1505
Hallandale Beach, FL 33009

   

UNITED STATES OF AMERICA  FOREVER/USA   UNITED STATES OF AMERICA  FOREVER/USA   UNITED STATES OF AMERICA  FOREVER/USA   UNITED STATES OF AMERICA  FOREVER/USA   UNITED STATES OF AMERICA  FOREVER/USA

Clerk of The Court
U.S. Federal Building and Courthouse
299 East Broward Boulevard
#108
Fort Lauderdale, Florida 33301