**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**



Case No. 0:26-cv-60543

Brian Evans,

Plaintiff, Pro Se,

v.

Inter Miami CF, LLC,

Defendant.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff Brian Evans, proceeding pro se, files this First Amended Complaint against Defendant

Inter Miami CF, LLC and alleges as follows:

**INTRODUCTION**

This action arises from representations made by uniformed Inter Miami stadium personnel after

Plaintiff arrived at the stadium and after those personnel reviewed Plaintiff's tickets and related

written communications. After reviewing Plaintiff's materials, Inter Miami personnel directed

1

Plaintiff to relocate from the premium location where Plaintiff and his nephew Franco had positioned themselves so that Franco's sign would be visible to Lionel Messi during the match. In exchange for relinquishing that location, Inter Miami personnel expressly promised that they would return after the match and escort Plaintiff and Franco to receive a photograph opportunity with Lionel Messi. Plaintiff relied upon that representation and surrendered the location associated with the anticipated interaction. Inter Miami personnel never returned, the promise was never honored, and the opportunity was permanently lost.

This action concerns Inter Miami's own conduct during stadium operations. It does not concern only the online ticket marketplace or only the conduct of StubHub before the event. Plaintiff's separate lawsuit against StubHub concerns alleged pre-purchase listing misdescription and marketplace conduct by a third-party reseller before Plaintiff arrived at the stadium. This action instead concerns a later, separate, and independent representation made directly by Inter Miami personnel after Plaintiff arrived, after they reviewed Plaintiff's tickets and communications, and after they induced Plaintiff to surrender something of value. The acts, actors, time periods, duties, and injuries in the two cases are materially different.

## JURISDICTION AND VENUE

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Count I arises under the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false or misleading commercial representations concerning the nature, characteristics, or qualities of goods or services in commerce. Defendant operates a Major League Soccer franchise and markets its events nationally through interstate commerce, including broadcast media, online ticket sales, and the

2

promotion of premium fan experiences. The representations at issue were made during the commercial operation of a professional sporting event and concerned the nature and characteristics of the services being provided to a paying spectator. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts and form part of the same case or controversy. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this action occurred in Broward County, Florida, at Defendant's stadium.

## PARTIES

Plaintiff Brian Evans is an individual residing in Hallandale Beach, Florida. Plaintiff is a fifteen-time Billboard charting recording artist who has performed the National Anthem at more than fifty major league sporting events. Plaintiff's professional career depends heavily upon credibility, reputation, and reliability within the entertainment industry. Plaintiff was the purchaser of the tickets at issue, the contracting consumer, and the person who personally relied upon the representations made by Inter Miami personnel. Plaintiff attended the match with his nephew Franco, but the promises at issue were made to Plaintiff and induced Plaintiff's own detrimental change in position.

Defendant Inter Miami CF, LLC is a professional Major League Soccer franchise that operates commercial sporting events in Fort Lauderdale, Florida. Defendant markets premium seating, hospitality experiences, and enhanced fan experiences to consumers attending its matches. Defendant staffs its stadium with uniformed personnel responsible for ticket verification, guest services, seating issues, and access-related decisions during stadium operations. Those personnel

3

act with actual or apparent authority when interacting with ticketed guests in the ordinary course of Defendant's commercial operations. Their representations concerning seating, access, accommodations, and event-related experiences are attributable to Defendant.

## EXHIBITS

Exhibit A is the communication from Jorge Messi concerning Franco's sign and its visibility to Lionel Messi during the match.

Exhibit B is the premium seating documentation and ticket confirmations presented to Inter Miami personnel at the stadium.

Exhibit C is the correspondence between Plaintiff and Inter Miami, including communications concerning the National Anthem and related event discussions.

Exhibit D is the photograph of Franco at the stadium with the sign that was provided to Jorge Messi and relayed for Lionel Messi to look out for.

Exhibit E is documentation reflecting Plaintiff's Billboard chart placements.

## GENERAL FACTUAL ALLEGATIONS

Plaintiff attended an Inter Miami match with his nephew Franco. Plaintiff possessed tickets and related documentation reflecting premium or suite-level seating associated with the event. Plaintiff and Franco positioned themselves in a location where Franco's sign would be visible to Lionel Messi during the match. Prior to the event, Plaintiff communicated with Jorge Messi, the father of Lionel Messi, regarding Franco's sign and the possibility that Lionel Messi might notice Franco during the game if they were positioned where the sign could be seen. These

4

communications made the specific location from which Plaintiff and Franco were watching the match materially important.

Plaintiff also advised Inter Miami that he was undergoing cancer treatment and lacked the physical ability to wait outside in extreme heat hoping for an uncertain chance encounter. Plaintiff reasonably believed that the premium seating and related written communications provided an organized and safe means to create the intended moment for Franco. Plaintiff did not attend the event merely to sit anywhere in the stadium. Plaintiff attended with a defined objective supported by communications and the location from which Franco's sign could be seen. This made the precise seating location materially valuable to Plaintiff independent of the bare ticket itself.

After Plaintiff arrived at the stadium, uniformed Inter Miami personnel wearing visible official badges approached Plaintiff and reviewed Plaintiff's tickets and related written communications. These individuals were not strangers or unaffiliated spectators. They were acting in official stadium capacities and were positioned to interact with guests regarding ticket verification, seating placement, and event operations. They reviewed Plaintiff's materials, discussed the situation surrounding Plaintiff's presence at that location, and then instructed Plaintiff to relocate to inferior seating. Their conduct conveyed operational authority, and their roles made it reasonable for Plaintiff to believe they could bind Inter Miami in connection with the accommodation they proposed.

After reviewing Plaintiff's tickets and communications, those Inter Miami personnel made a specific and definite promise that if Plaintiff complied with their instruction and relocated, Inter

Miami staff would return after the match and escort Plaintiff and Franco to receive a photograph opportunity with Lionel Messi. This promise was not vague or casual. It was made in direct response to the seating issue that Inter Miami personnel themselves were addressing. It was presented as the substitute accommodation for surrendering the location Plaintiff had occupied. The promise told Plaintiff what Inter Miami would do, when Inter Miami would do it, and why Plaintiff should comply.

Plaintiff relied on that promise. Plaintiff did not move merely because he was told to sit in a different seat. Plaintiff moved because Inter Miami personnel offered a replacement benefit in exchange for relinquishing the location from which the anticipated interaction with Lionel Messi was expected to occur. Plaintiff surrendered the exact vantage point associated with the intended moment for Franco because Inter Miami promised a post-game retrieval and photograph opportunity instead. Plaintiff would not have given up that location absent the promise made by Inter Miami personnel. Once the match ended, however, no one returned, no one escorted Plaintiff or Franco anywhere, and the promised opportunity never occurred.

The opportunity was permanently lost. Opportunities for personal interactions and photographs with Lionel Messi are exceptionally rare and frequently command substantial value in charity auctions and private events. Such opportunities regularly reach six-figure valuations because of Messi's global recognition and limited availability. More importantly, the opportunity alleged here was event-specific and time-sensitive: once the match concluded and Inter Miami failed to return, the promised benefit could not be recreated later. Plaintiff therefore lost something of real

value, both because he surrendered the location tied to the anticipated interaction and because the promised substitute experience never occurred.

The difference between this case and Plaintiff's separate StubHub case is direct, substantial, and dispositive. The StubHub case concerns pre-purchase online listing representations by a third-party ticket marketplace and whether StubHub misdescribed ticket inventory before the event. That case focuses on the original online transaction and the marketplace statements made before Plaintiff arrived at the stadium. This case concerns different conduct by a different defendant at a different time. Here, the actionable conduct occurred after Plaintiff arrived, after Inter Miami personnel reviewed Plaintiff's tickets and communications, and after Inter Miami personnel made a new and separate promise that induced Plaintiff to relinquish something of value.

The two lawsuits also involve different legal duties and different injuries. StubHub's alleged duty arose from the online sale and description of tickets before the event. Inter Miami's duty arose from the conduct of its uniformed personnel during stadium operations when interacting directly with a paying guest. StubHub's alleged wrong concerns online marketplace misdescription. Inter Miami's wrong concerns a later operational promise, made by Inter Miami personnel, that induced Plaintiff to change position during the event itself. The existence of one lawsuit does not undermine the other because the acts, actors, and injuries are not the same.

Plaintiff also repeatedly notified Inter Miami personnel and counsel that ticket listings were appearing online offering "suite" seating that Inter Miami itself acknowledges is not ordinarily available for public sale through ordinary consumer channels. Plaintiff provided screenshots,

7

purchase confirmations, and real-time documentation showing those listings and purchases. These were not vague warnings or generalized suspicions. They were specific, contemporaneous notices that consumers were being induced to purchase seats marketed as premium suite seating in a manner inconsistent with Inter Miami's own position regarding that inventory. Despite receiving those warnings, Inter Miami did not meaningfully respond, halt the deceptive activity, or warn consumers.

That notice matters here because Inter Miami's on-site promise did not occur in a vacuum. By the time Inter Miami personnel told Plaintiff to relinquish his location in exchange for a promised post-game opportunity, Defendant had already received direct warnings about deceptive suite-related ticket activity affecting consumers. Rather than correcting the situation with clarity and transparency, Inter Miami's personnel induced Plaintiff's compliance through a substitute promise that was never honored. This later promise therefore compounded, rather than cured, the confusion and deception surrounding the premium seating experience. It also reinforces that Plaintiff's reliance on Inter Miami's representations was reasonable under the circumstances.

Plaintiff also had written communications with Inter Miami concerning a future National Anthem performance at the opening of Inter Miami's new stadium. Those communications included confirmations that Plaintiff would perform the National Anthem. In the professional entertainment industry, a confirmed or represented performance opportunity with a major sports franchise is commercially and reputationally significant beyond the performance fee itself. Plaintiff communicated that opportunity within the industry, including to agents, promoters, and

8

other professional contacts. When such an opportunity later fails to materialize, the resulting harm extends beyond the loss of a single performance and includes diminished credibility, reputational injury, and lost commercial opportunity.

At all relevant times, the Inter Miami personnel who reviewed Plaintiff's materials, discussed his seating situation, directed him to relocate, and promised post-game retrieval acted with at least apparent authority. Florida law recognizes apparent authority where a principal places agents in a position that would lead a reasonable person to believe they had authority to act. Mobil Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla. 1995). Mobil Oil applies here because Inter Miami placed uniformed, credentialed personnel in fan-facing operational roles involving ticket review, seating issues, and guest management, making it reasonable for Plaintiff to believe they could speak for the club in offering a substitute accommodation tied to the event experience. A reasonable guest does not parse internal corporate delegation when official stadium staff review tickets, direct seating movement, and make a specific promise in the course of solving a stadium-access issue.

## COUNT I

## LANHAM ACT – FALSE OR MISLEADING COMMERCIAL REPRESENTATION

### 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act prohibits false or misleading representations of fact that misrepresent the nature, characteristics, or qualities of goods or services offered in commerce. The Supreme Court has held that reputational injury and lost commercial opportunity fall within the zone of interests protected by the Lanham Act. Lexmark Int'l, Inc. v. Static Control

Components, Inc., 572 U.S. 118, 131–32 (2014). Lexmark applies here because Plaintiff alleges that Inter Miami's misleading representations concerning the event experience caused both the loss of a valuable opportunity and reputational harm in Plaintiff's professional field. Plaintiff is not suing over a mere broken courtesy; he is suing over a misleading commercial representation made during the provision of Defendant's services to a paying consumer.

The Eleventh Circuit has explained that a Lanham Act false advertising claim requires a misleading commercial representation, materiality, and resulting injury. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004). Hickson applies here because the representation at issue concerned the characteristics of the services Inter Miami was providing during a ticketed sporting event, specifically whether Plaintiff would receive a substitute premium-adjacent benefit—a post-game photograph opportunity with Lionel Messi—in exchange for relocation from the location he occupied. Inter Miami's personnel did not merely discuss logistics; they represented the nature and quality of the fan experience Plaintiff would receive if he complied. That is a representation about services in commerce.

The representation was commercial in both context and substance. It was made by official Inter Miami personnel during stadium operations while they were reviewing tickets, managing seating, and interacting with a paying guest. It concerned access, accommodation, and a premium experiential benefit directly tied to the perceived value of the event. It therefore related to the characteristics of the service being delivered, not merely to idle conversation. The fact that the representation occurred during performance of the service rather than before initial ticket

10

purchase does not make it noncommercial where it still described what service Plaintiff would receive from Inter Miami in exchange for his compliance.

The representation was also materially misleading. Plaintiff changed position because of it. He relinquished the exact location from which the anticipated interaction with Lionel Messi was expected to occur. Inter Miami's promise altered Plaintiff's conduct during the event in a concrete way. That change in conduct and resulting injury satisfy materiality and causation because the promise induced Plaintiff to give up something valuable in exchange for a substitute benefit Inter Miami did not provide.

The Lanham Act also reaches misleading representations concerning the nature and characteristics of services offered to consumers in a commercial environment. Courts recognize that misleading representations made during the provision of services may fall within the statute where they concern the quality or characteristics of those services. Hickson applies here because the representation concerned the premium fan experience associated with attending an Inter Miami match. It described a player-related benefit presented as part of the service Plaintiff would receive. At the pleading stage, those facts plausibly place the representation within the statute's scope.

Rule 9(b) does not defeat this count. Plaintiff identifies the substance of the statement, the setting in which it was made, the speakers as uniformed Inter Miami personnel with visible badges, the fact that the statement was made after review of Plaintiff's tickets and communications, the quid pro quo nature of the exchange, and the resulting reliance and harm. Rule 9(b) requires sufficient

11

detail to place Defendant on notice of the precise misconduct alleged. Plaintiff has done so here. The exact identity of the employee is information uniquely within Defendant's control and may be obtained in discovery.

Inter Miami's earlier notice of deceptive suite-related ticket activity further strengthens this count. Plaintiff repeatedly warned Inter Miami that premium "suite" seating was being marketed to consumers in misleading ways. By receiving notice of those misleading marketplace representations and then allowing its own personnel to reinforce expectations of a substitute premium benefit through the Messi promise, Inter Miami permitted misleading commercial information concerning its services to remain in circulation and to injure Plaintiff. Plaintiff suffered damages including the loss of the promised opportunity, the loss of the value of the represented experience, and resulting reputational harm.

Representations concerning premium seating access, player interaction opportunities, hospitality accommodations, and comparable benefits directly influence consumer decisions regarding attendance and conduct at Inter Miami matches. Misrepresentations regarding such experiences concern the nature and characteristics of the services being offered in commerce. Plaintiff has therefore plausibly alleged a false or misleading commercial representation under § 43(a). This count is properly pleaded.

## COUNT II

## PROMISSORY ESTOPPEL

12

Promissory estoppel applies where a clear promise induces reliance and injustice can be avoided only by enforcing the promise. The Florida Supreme Court has recognized that detrimental reliance is the core of promissory estoppel. W.R. Grace & Co. v. Geodata Servs., Inc., 547 So.2d 919, 924 (Fla. 1989). W.R. Grace applies here because Inter Miami personnel made a direct promise intended to induce Plaintiff to relocate, and Plaintiff changed position because of that promise. The law does not require the promise to arise in a formal contract; it requires that a definite promise foreseeably induce reliance.

The promise here was clear, specific, and operationally immediate. Inter Miami personnel told Plaintiff that if he moved from the premium location to inferior seating, staff would return after the match and escort Plaintiff and Franco to receive a photograph opportunity with Lionel Messi. This was not a vague statement of hope or a noncommittal expression of goodwill. It stated what Plaintiff had to do, what Inter Miami would do, and when Inter Miami would do it. That level of specificity supports promissory estoppel.

Plaintiff's reliance was reasonable and substantial. Inter Miami personnel were uniformed, visibly credentialed, and engaged in ticket review and seating management functions at the time the promise was made. Plaintiff had no reason to treat their promise as meaningless or socially casual. He reasonably understood them to be acting with authority on behalf of the club. Plaintiff therefore relied on the promise when he surrendered the precise location tied to the anticipated interaction.

Plaintiff also suffered a detrimental change in position. He lost the location-associated opportunity, and the substitute opportunity Inter Miami promised never occurred. This was not

merely compliance with a neutral instruction divorced from any promised benefit. Plaintiff relinquished something of value in exchange for a promised substitute accommodation. Once the match ended, the injury became permanent.

Injustice can be avoided only by enforcing the promise through relief in this action. Inter Miami obtained Plaintiff's compliance through a representation it did not honor. If the promise had not been made, Plaintiff would not have surrendered the location associated with the intended moment for Franco. Promissory estoppel exists precisely to address this kind of reliance-based injury.

## COUNT III

## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

## FDUTPA

FDUTPA prohibits deceptive acts or unfair practices occurring in trade or commerce. Florida courts construe the statute broadly to protect consumers from misleading conduct in commercial settings. Davis v. Powertel, Inc., 776 So.2d 971, 973–74 (Fla. 1st DCA 2000). Davis applies here because Plaintiff was a paying consumer receiving services from Inter Miami during a commercial sporting event, and the misleading conduct occurred in the course of those services. The statute does not require that the deception occur before the initial ticket purchase where the deceptive conduct still occurs in trade or commerce and harms a consumer.

14

Inter Miami's conduct was deceptive because its uniformed personnel made a representation likely to mislead a reasonable consumer under the circumstances. A reasonable guest whose tickets and communications were reviewed by official stadium personnel would understand that a promise of post-game retrieval for a Messi photo opportunity was a real accommodation being offered by the club in exchange for relocation. Plaintiff was not required to assume the promise was false or unauthorized. The deception therefore worked as intended: it caused Plaintiff to change position.

Inter Miami's conduct was also unfair. Plaintiff had already warned Inter Miami about deceptive suite-related ticket activity affecting consumers. Rather than clearly correcting the situation when Plaintiff arrived, Inter Miami's personnel deepened the problem by inducing Plaintiff to move through a substitute promise they never performed. Conduct is unfair under FDUTPA when it is unethical, oppressive, unscrupulous, or substantially injurious to consumers. Inducing a consumer to surrender a valuable location in exchange for an unfulfilled substitute benefit meets that standard.

Plaintiff suffered actual damages and other cognizable harm. He lost the value of the promised opportunity, the value of the location he surrendered in exchange for it, and the value of the fan experience as represented by Inter Miami's personnel. This is not a case involving mere disappointment or emotional upset alone. It is a consumer case involving deceptive conduct during the provision of paid services and the loss of valuable event-specific opportunities.

Inter Miami's prior notice of deceptive suite-ticket activity strengthens this count. Once Inter Miami knew consumers were being misled about premium seating, its obligation not to

15

compound that deception during on-site interactions increased. Its failure to warn, correct, or refrain from making further misleading representations supports liability under FDUTPA. Plaintiff is therefore entitled to pursue relief under the statute.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

Under Florida law, negligent misrepresentation occurs when false information is supplied in the course of business, for the guidance of others, and another party justifiably relies upon that information to their detriment. Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334, 337 (Fla. 1997). Gilchrist applies here because Inter Miami personnel supplied inaccurate information during a business interaction with a paying guest, and Plaintiff relied on that information in deciding how to act during the event. The misinformation was not abstract. It was operational guidance tied to a specific relocation decision.

Inter Miami personnel represented that Plaintiff would be retrieved after the match for a photograph opportunity with Lionel Messi if he relocated. That information was supplied during the course of Defendant's business while its employees were performing guest-services and seating-management functions. The representation was given for the purpose of guiding Plaintiff's immediate conduct. Plaintiff followed that guidance and changed position.

Plaintiff's reliance was justified. The information came from uniformed, credentialed Inter Miami personnel who had reviewed Plaintiff's tickets and related communications and were actively directing his seating. The setting, the roles of the speakers, and the specificity of the

16

promise made the information sufficiently reliable for a reasonable guest to trust. Plaintiff was not required to assume that official stadium staff were inventing accommodations without basis.

The misinformation caused concrete harm. Plaintiff relinquished the location associated with the anticipated interaction and lost the promised substitute opportunity when Inter Miami failed to return. That harm flowed directly from the false information. It was not caused by StubHub's earlier online conduct, because the specific relocation decision and promised retrieval were Inter Miami's separate acts.

The existence of Plaintiff's StubHub case does not defeat this count. StubHub's alleged earlier marketplace misdescription and Inter Miami's later negligent misinformation are distinct wrongs. Inter Miami's liability arises from what its own employees said after Plaintiff arrived and after they reviewed his materials. That later, independent conduct supports a standalone negligent misrepresentation claim.

## COUNT V

## FRAUDULENT MISREPRESENTATION

Fraudulent misrepresentation requires a false statement of material fact, knowledge of falsity, intent that the statement induce reliance, and resulting damages. Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010). Butler applies here because Plaintiff alleges a material false statement made during a business interaction that was intended to induce Plaintiff to act and did induce that action. The statement at issue was not incidental. It was the reason Plaintiff surrendered the location associated with the anticipated interaction.

17

The representation was material. Whether Plaintiff remained in the premium location or relinquished it depended on whether Inter Miami would actually provide the promised substitute opportunity. The promise of post-game retrieval for a Messi photo opportunity was precisely the fact that caused Plaintiff to relocate. Without that promise, Plaintiff would not have changed position.

The surrounding circumstances support fraudulent intent or, at minimum, reckless disregard for truth. Inter Miami personnel made a specific promise tied to a unique and valuable event-access benefit, yet no one returned and no fulfillment effort occurred. Plaintiff will seek discovery concerning the identity of the employees, internal communications, and whether any retrieval arrangement ever existed. At the pleading stage, the facts plausibly support that the promise was false when made or made recklessly without a factual basis.

Rule 9(b) is satisfied. Plaintiff identifies the substance of the promise, the setting in which it was made, the speakers as uniformed Inter Miami personnel with visible badges, the circumstances of ticket and communication review, the quid pro quo nature of the exchange, and the resulting reliance and harm. Federal Rule of Civil Procedure 9(b) requires the who, what, when, where, and how of the misrepresentation, not impossible details known only to the defendant before discovery. Plaintiff has provided more than enough particularity to place Inter Miami on notice of the precise misconduct alleged.

Plaintiff suffered damages as a direct result. He relinquished something valuable, lost the promised substitute benefit, and suffered the permanent loss of a unique opportunity. The

fraudulent statement therefore caused concrete, compensable harm. This count is properly pleaded.

**COUNT VI**

**REPUTATIONAL HARM AND LOSS OF PROFESSIONAL OPPORTUNITY**

Reputational harm and loss of commercial opportunity are legally cognizable injuries. The Supreme Court has recognized that reputational injury and lost commercial opportunities are actionable harms in the context of misleading commercial representations. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131–32 (2014). Lexmark applies here because Plaintiff's damages extend beyond the lost event experience and include injury to his professional reputation and future opportunities as a performer. Plaintiff is not merely alleging embarrassment; he is alleging injury to a commercially valuable professional identity.

Inter Miami represented that Plaintiff would perform the National Anthem at a future stadium event. Those representations were commercially meaningful because Plaintiff is a fifteen-time Billboard charting artist whose career depends on credibility and reliability in public-facing engagements. In the entertainment industry, communicating a confirmed professional opportunity carries real reputational consequences. Plaintiff relied on Inter Miami's representations and communicated that opportunity within his professional network.

When the promised performance did not occur, Plaintiff suffered more than the loss of a single event. He suffered diminished credibility with agents, promoters, and other industry contacts who reasonably view such representations as confirmed bookings or imminent professional

commitments. That type of reputational injury can directly impair future opportunities. The harm is therefore both professional and commercial.

This count also fits within the broader pattern alleged in this action. Inter Miami made or permitted meaningful representations to Plaintiff—both concerning the National Anthem opportunity and the Messi-related stadium promise—and left Plaintiff to absorb the fallout when those representations did not materialize. The reputational consequences were foreseeable, especially given Plaintiff's profession. Plaintiff is therefore entitled to pursue relief for this category of harm.

## CONCLUSION

Plaintiff did not merely comply with a routine seating instruction. Inter Miami personnel did not simply tell Plaintiff to sit in the seat printed on his ticket and walk away. Instead, after reviewing Plaintiff's tickets and written communications, those personnel offered a specific substitute accommodation — a post-game retrieval and photograph opportunity with Lionel Messi — in exchange for Plaintiff relinquishing the location from which Franco's sign was visible during the match. That exchange is the reason Plaintiff relocated. The promise was therefore not incidental to a seating directive but the operative representation that induced Plaintiff's change in position. Had the promise not been made, Plaintiff would have remained in the location associated with the anticipated interaction and would not have surrendered that vantage point.

Representations concerning player interaction opportunities, premium hospitality experiences, and enhanced access to athletes are widely marketed components of modern professional sports entertainment and directly influence consumer decisions concerning attendance, seating, and in-stadium conduct.

20

The representation alleged here concerned the nature and quality of the event experience Inter Miami was providing to a paying consumer during the commercial operation of a professional sporting event. Modern professional sports franchises—including Inter Miami—routinely market premium seating, hospitality access, and player-adjacent experiences as part of the value of attending matches. Representations concerning access to players, premium vantage points, and related fan experiences therefore relate directly to the characteristics of the services being delivered to consumers in commerce. When Inter Miami personnel reviewed Plaintiff's tickets and communications and promised a post-game photograph opportunity with Lionel Messi as the substitute benefit for relocating, they were describing the nature of the service Plaintiff would receive from Inter Miami in connection with the event. A reasonable consumer would treat such a representation by uniformed stadium personnel as an official accommodation offered by the club during the provision of its services. That representation materially altered Plaintiff's conduct during the event and resulted in the loss of the unique opportunity associated with the location he relinquished.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and award:

a. Compensatory damages in an amount to be determined at trial;

b. All consequential damages permitted by law;

c. Costs of suit and taxable costs;

d. Pre-judgment and post-judgment interest where permitted;

e. Such other and further relief as this Court deems just and proper; and

21

f. Trial by jury on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Brian Evans

2080 South Ocean Drive, Suite 1505

Hallandale Beach, Florida 33009

Telephone: (954) 214-3076

Email: croonermaui@gmail.com

Plaintiff, Pro Se

Dated: March 13, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing First Amended Complaint

was served by U.S. Mail on March 13, 2026 upon the following counsel of record:

John Gravante

Jayaram Law

3800 NE 1st Avenue

Suite 500

Miami, Florida 33137

Telephone: (516) 441-0961

Email: John@jayaramlaw.com


Counsel for Defendant Inter Miami CF, LLC

Brian Evans

Plaintiff, Pro Se

2080 South Ocean Drive, Suite 1505

Hallandale Beach, Florida 33009

Telephone: (954) 214-3076

Email: croonermaui@gmail.com